IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 19-cv-0023-REB

MONTE LEE HAWKINS,

    Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[2] filed January 4, 2019, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges he is disabled as a result of degenerative disc disease of the lumbar spine, degenerative joint disease of the right trapezium/first metacarpal joint, and depression. After his applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on December 12, 2017. At the time of the hearing, plaintiff was 61 years old. He has a high school education and past relevant work experience as a ranch hand, heavy equipment operator, and laborer. He has not engaged in substantial gainful activity since at least June 30, 2012, his amended alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Although the medical evidence established plaintiff suffered from severe impairments, the judge found the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other impairments, most particularly depression, were found to be nonsevere. The ALJ determined plaintiff had the residual functional capacity to perform a range of unskilled medium work with postural and environmental limitations. Although this conclusion precluded plaintiff's past relevant work, the ALJ found there were other jobs existing in substantial numbers in the national and local economies he could perform. She therefore found plaintiff not disabled at step five of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

>    4.  If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform her past work despite any limitations.
>
>    5.  If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(I)-(v).[3] ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. ***Bowen v. Yuckert***, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy. ***Id.*** A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires

---

[3] Throughout this opinion, I cite to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations, which contain the Commissioner's regulations relating to disability insurance benefits. Identical, parallel regulations can be found in Part 416 of that same title, relating to supplemental security income benefits.

more than a scintilla but less than a preponderance of the evidence.  ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  ***Id.***

### III.  LEGAL ANALYSIS

In three interrelated points of error, plaintiff claims the ALJ's determination of his residual functional capacity was flawed for failing to include restrictions related to his mental impairments and for rejecting the lifting restrictions endorsed by the physical consultative examiner.  Finding no reversible error in the ALJ's conclusions on these points, I affirm.

Although acknowledging plaintiff suffered from depression, the ALJ found that impairment to be nonsevere at step two of the sequential evaluation, concluding that plaintiff's depression imposed no more than mild limitations in any area of mental functioning measured by the "Paragraph B" criteria.[4]  (Tr. 20-22.)  ***See*** 20 C.F.R. §

---

[4]  Section 12.00 of the listings describes various mental disorders.  Each of the nine diagnostic categories identified therein is defined by three criteria: a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria) and a set of impairment-related functional limitations (the paragraph B criteria).  (Alternative functional criteria (the paragraph C criteria) are included for certain classes of disorders.)  A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the capsule definition and the criteria of both paragraphs A and B, or A and C, where appropriate, are satisfied.  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00A.

Paragraph B requires proof that a medically determinable impairment has resulted "in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  ***See id.***, § 12.04B.

404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). In reaching this conclusion, the ALJ gave "limited weight" to the opinions of the consultative psychiatric examiner, Dr. William Morton, that plaintiff had moderate mental limitations in his ability to maintain concentration, persistence, and pace; use good judgment; and respond appropriately to changes in the workplace. (*See* Tr. 266.) Plaintiff maintains the ALJ's reasons for discounting these opinions do not bear scrutiny.

I disagree. Although the ALJ's observation that Dr. Morton only examined plaintiff once provides no justification in itself for discounting his opinions,[5] her reliance on the extremely limited and conservative nature of plaintiff's mental health treatment and the essentially normal reports regarding his mental status sufficiently substantiate her decision. **See Castelonia v. Berryhill**, 2019 WL 1991949 at *3 (D. Colo. May 6, 2019).[6] In determining whether an impairment is disabling, the ALJ may properly consider whether the claimant has received minimal medical attention and/or been treated conservatively, as well as whether he has failed to follow prescribed treatment or sought treatment only sporadically. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v); **Hargis v. Sullivan**, 945 F.2d 1482, 1489 (10th Cir. 1991); **Barnett v. Apfel**, 231 F.3d 687, 690

---

[5] Since, by its very nature, a consultative examination is intended to be a one-time event. **See Daniel v. Astrue**, 2008 WL 3833761 at *5 (D. Colo. Aug. 13, 2008).

[6] I categorically reject plaintiff's suggestion that the ALJ's statements in this regard were conclusory or mere boilerplate. Having already recited the relevant evidentiary record supporting her decision, she was not required to repeat herself in the context of her conclusions. **See Best–Willie v. Colvin**, 514 Fed. Appx. 728, 733 (10th Cir. March 26, 2013) ("Although there was not a contemporaneous discussion of this evidence in discounting [the medical source's] opinion, in reading the ALJ's decision as a whole, it is evident [the medical source's] opinion is inconsistent with the record."). To the contrary, the ALJ recounted in detail, with specific citation to the record, the sparse evidence regarding plaintiff's mental health treatment. (Tr. 20-22.)

(10th Cir. 2000).[7]

My own review of the record tracks the ALJ's recitation of the limited and largely unremarkable evidence related to plaintiff's mental health treatment. Plaintiff sought mental health treatment a mere handful of times in the five years between his alleged date of onset and the date of the hearing.[8] In January 2012, prior to his alleged date of onset, plaintiff reported he had gone off Paxil and asked to resume medication. (Tr. 241.) As far as the record reflects, he did not seek mental health treatment again until October 2015, when he sought to reestablish care and expressed willingness to see a therapist. (Tr. 251-252.) However, by the following month, he had not yet scheduled an appointment (Tr. 321), and although notes from December 2015 suggest plaintiff had at least contacted a counselor to establish care and should "continue with therapist for mental health counseling" (Tr. 305), it appears he did not keep any appointments with the counselor (*see* Tr. 279).

Plaintiff did not seek mental health care again until October 2016. (Tr. 291.) At his follow up appointment in December, the doctor informed him that "counseling is an essential addition to medication in the treatment of depression" and referred him to Mental Health Services. (Tr. 277.) Yet plaintiff did not follow up on this referral either

---

[7] Plaintiff cites *Grotendorst v. Astrue*, 370 Fed. Appx. 879 (10th Cir. March 22, 2010), for the proposition that "consideration of the amount of treatment received by a claimant does not play a role in [the] determination" whether an impairment is severe. *Id.* at 883. The question of severity, however, is a step two determination. Plaintiff's complaint is addressed to the ALJ's failure to incorporate Dr. Morton's suggested restrictions in her residual functional capacity assessment at step four of the sequential evaluation. *See* 20 C.F.R. § 404.1545(e). In the context of that determination, it was entirely appropriate for the ALJ to correlate plaintiff's conservative, sporadic treatment to a finding that his mental impairments were not so disabling as to warrant any particular functional restrictions.

[8] Moreover, in 2016, plaintiff reported that his mental health symptoms began more than ten years prior (*see* Tr. 264, 279), encompassing half a dozen years prior to his alleged date of onset. *See Galvez v. Berryhill*, 2019 WL 2121291 at *4 (D. Colo. May 15, 2019); *Castolenia*, 2019 WL 1991949 at *3.

7

(Tr. 352), and although he eventually had an initial assessment with a licensed professional counselor in July 2017 (Tr. 357-361), he missed his following appointment, failed to respond to repeated attempts to contact him, and was ultimately discharged from care in October 2017 (Tr. 362). This history more than adequately supports the ALJ's conclusion that plaintiff's mental impairments did not warrant additional mental limitations on his residual functional capacity.

Moreover, and as the ALJ further observed, with the exception of these periodic reports of mental symptoms, plaintiff consistently was reported by his providers to be oriented to time, place, and person, exhibit appropriate mood and affect, and demonstrate normal insight and judgment. (See Tr. 20-21, 235, 246, 315.) Plaintiff observes that similar findings were noted even when he presented with complaints of depression (*see, e.g.*, Tr. 281, 294), and concludes these reports therefore are internally inconsistent. I cannot agree. Plaintiff's complaints of symptoms are simply his subjective reports to his medical providers; they are not necessarily coextensive with a medical source's objective observations of his mood and affect.

Nor, contrary to plaintiff's suggestion, was the ALJ required to "weigh" these mental status examination findings in the manner medical source opinions must be weighed. *See* 20 C.F.R. § 404.1527(c).[9] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do

---

[9] Because plaintiff's claims were filed prior to March 27, 2017, this section applies. For claims filed after that date, the Commissioner is no longer required to "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a).

8

despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The mere observations contained in plaintiff's treatment notes reflect no such judgments, and thus are not medical opinions. ***McDonald v. Astrue***, 492 Fed. Appx. 875, 883-84 (10th Cir. July 23, 2012) (citing ***Cowan v. Astrue***, 552 F.3d 1182, 1189 (10th Cir. 2008)).

Plaintiff also faults the ALJ for allegedly failing to provide adequate reasons for declining to adopt the lifting restrictions endorsed by Dr. Timothy Moser, the physical consultative examiner. Noting plaintiff's history of degenerative disc disease and "carpal tunnel syndrome,"[10] Dr. Moser suggested plaintiff should be limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently. (Tr. 271.) If these restrictions had been adopted, they would have limited plaintiff to light work. ***See*** 20 C.F.R. § 404.1567(b). However, the ALJ rejected these particular recommendations of Dr. Moser (as well as others not implicated by plaintiff's arguments on appeal), which she found inconsistent with the mild objective findings evidenced by imaging studies, plaintiff's limited treatment history, Dr. Moser's own findings on examination, and plaintiff's activities of daily living. (Tr. 28.)

I do not perceive reversible error in that determination. Although here again, the fact that Dr. Moser only examined plaintiff once is by itself insufficient reason to reject his conclusions, the other reasons cited by the ALJ are cogent. Imaging studies in fact did show no more than mild degenerative changes in plaintiff's spine and wrist. (***See*** Tr. 261, 275-276 (duplicate).) While those findings alone might not necessarily show the

---

[10] This is the only reference to carpal tunnel syndrome in the record. Plaintiff's treating sources believed his hand pain to be related to osteoarthritis (Tr. 320, 324), which x-rays appear to have confirmed (***see*** Tr. 261 (noting mild degenerative changes)).

9

ability to lift more than Dr. Moser suggested, that plaintiff sought treatment only intermittently and was treated conservatively for these conditions amply support the ALJ's conclusion that they were not as limiting as found by Dr. Moser. **Huston v. Bowen**, 838 F.2d 1125, 1132 (10th Cir. 1988); **Fernandez v. Colvin**, 2014 WL 928246 at *3 (D. Colo. March 10, 2014).

For example, although plaintiff reported to Dr. Moser that he had experienced back pain for the preceding 15 years (Tr. 268; *see also* Tr. 252), the first mention of back pain in his medical records does not occur until October 2015, more than three years after his alleged date of onset (Tr. 251, 330 (duplicate)). At his next visit in November, plaintiff had no musculoskeletal complaints and a normal musculoskeletal examination (*see* Tr. 313, 315), and in December, while back pain was noted, it was not a primary complaint, and plaintiff's gait was reported as normal (Tr. 308).

Similarly, plaintiff did not complain of pain in his hands until November 2015, when his symptoms were described as chronic, but moderate and stable. (Tr. 321.) Examination of his hands was consistent with osteoarthritis. (Tr. 320, 324.) Contemporaneous notes suggest plaintiff had been prescribed naproxen for pain. (**See** Tr. 347, 349, 351.) That plaintiff did not seek treatment for complaints of pain in his hands again until October 2016 (Tr. 291), and then failed to follow through on the referral for x-rays his physician ordered (*see* Tr. 290), suggests his hand pain was either well controlled with conservative treatment and/or did not otherwise restrict him to a degree more disabling than the ALJ's residual functional capacity assessment found.

Finally, I reject plaintiff's argument that the ALJ failed to "prove" he was capable

of medium work. Contrary to plaintiff's implicit assumption, "[i]t is [his] burden to prove what his limitations are – not the ALJ's burden to prove what his capabilities are." ***McCloskey v. Colvin***, 2016 WL 6212519 at *6 (D. Colo. Oct. 24, 2016). Although counsel for plaintiff frequently likes to remind the court that "[t]he absence of evidence is not evidence" (***see* Plf. Br.** at 18[11] (quoting ***Thompson***, 987 F.2d at 1491)), the burden at step four is on the claimant to "demonstrate that the available evidence, rather than a gap in the record, reflects a more restrictive RFC than medium work in order to show that the ALJ's conclusion was not supported by substantial evidence." ***Id. See also Howard v. Barnhart***, 379 F.3d 945, 948 (10th Cir. 2004) (Commissioner's burden "does not include the burden to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered").[12] Plaintiff adduces no such evidence here. Remand therefore is not warranted.

## IV. ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

---

[11] The citation to ***Thompson*** is misleading in this context, since the disability determination there had been made at step five of the sequential analysis, where the burden of proof shifts from the claimant to the Commissioner. ***See Thompson***, 987 F.2d at 1486-87.

[12] Moreover, the Tenth Circuit has rejected the notion "that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." ***Howard***, 379 F.3d at 949.

Dated September 12, 2019, at Denver, Colorado.

BY THE COURT:

*Bob Blackburn*
Robert E. Blackburn
United States District Judge